IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:22-CV-00112-KDB-SCR

| | |
|---|---|
| NANNETTE POWERS,<br><br>    Plaintiff,<br><br>    v.<br><br>B+E MANUFACTURING CO., INC.; DAL INVESTMENT, INC.; STAINLESS VALVE COMPANY; AND DIRK A. LINDENBECK,<br><br>    Defendants. | **ORDER** |

Plaintiff Nannette Powers is a former employee of Defendant B+E Manufacturing Co., Inc. ("B+E") who alleges in this action that Defendants terminated her employment because of her sex and then retaliated against her for filing an EEOC charge in violation of Title VII of the Civil Rights Act of 1964 and North Carolina law. Defendants' have now filed a Motion for Summary Judgment (Doc. No. 19) on all of Plaintiff's claims. The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will partially **GRANT** and partially **DENY** the Motion. Specifically, the Court will allow Plaintiff to proceed to trial on her claim for sex discrimination under Title VII and wrongful discriminatory discharge under North Carolina law, but grant judgment in favor of Defendants on Plaintiff's claim of retaliation and her remaining state law claims.

## I.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v.*

1

*8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Mod. Mosaic, LTD v. Turner Construction Co.*, *et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id*., (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the

2

Case 3:22-cv-00112-KDB-SCR   Document 23   Filed 05/11/23   Page 2 of 16

mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining whether summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II.     FACTS AND PROCEDURAL HISTORY

Defendants B+E and the other related corporate defendants, Stainless Valve Company ("SVC") and DAL Investment Company ("DAL"), are North Carolina corporations which operate out of a single business facility in Monroe, North Carolina. The Defendants are owned and operated by members of the Lindenbeck family – father and founder Dirk Lindenbeck (Chairman of the Board of B+E), son Axel Lindenbeck (President), daughter Nora Lindenbeck (CFO), and son Michael Lindenbeck (Plant Manager). DAL – which are Dirk Lindenbeck's initials – is the parent corporation of B+E and SVC. B+E manufactures compounds and assemblies according to customer drawings. Its main "activities include manufacturing assembly, modification, and repair

of through-port valves, stretch-form dies, and specialty machine parts…" SVC is "a division of B+E [that] is involved in the design, development, and sales of the industrial through-port valves." *See* Doc. No. 21-7 at 44.[1]

The parties disagree about the scope of Dirk Lindenbeck's role with the company defendants generally and specifically with respect to Plaintiff's termination (as discussed further below). Defendants contend that Dirk was not formally employed or paid by Defendant B+E and in his role as chairman of the board he provided only "consulting help to the company when needed." *See* Doc. No. 20-5 at 21:18-25, 22:1-9. Also, Defendants state he "has no official position" with the namesake parent defendant "DAL." In contrast, Plaintiff points to evidence that although Dirk Lindenbeck claims to have been retired while Plaintiff worked at B+E, in addition to his corporate responsibilities he regularly attended weekly production meetings and frequented the manufacturing floor, particularly during 2019. *See* Doc. No. 21-4 at 54-55; Doc. No. 21-5 at 105-06; Doc. No. 21-1 at 261-64. Further, B+E business records show that from 2016 through May 31, 2022, Dirk Lindenbeck held the position of "sales and marketing assistant" to his son Axel. Doc. No. 21-8 at Def-2RTP27-002, 07, 12. Finally, Plaintiff states that she saw other more personal evidence that Dirk Lindenbeck ultimately ran the business operations. Specifically, she

---

[1] Notwithstanding the representations in its "Quality Manual" produced during the litigation and quoted above, Defendants assert that "Defendant Stainless Valve conducts no business, has no revenue, and has no employees" and "remains an active corporation for the sole purpose of protecting intellectual property, such as the brand name." *See* Doc. No. 20-3 at p.8. However, the factual dispute related to whether SVC has employees has limited relevance for this motion because whether or not the Defendants are an "integrated enterprise" is also genuinely disputed. *See Hukill v. AutoCare, Inc.*, 192 F. 3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh v.Y & H Corp.,* 546 U.S 500 (2006) (Under the "integrated enterprise" doctrine several companies may be found to be so interrelated that they constitute a single employer for purposes of liability); Doc. No. 21 at pp. 9-10; Doc. No. 21-10 at ¶ 1 (Plaintiff's sworn statement that she often performed work for both B+E and SVC).

testified that on one occasion she saw Dirk Lindenbeck backhand his son Axel during a meeting at the business facility because he did not like his son's response to something he said. *See* Doc. No. 21-1 at 88-90; Doc. No. 21-10 at ¶ 24. In sum, Dirk Lindenbeck's role with the corporate defendants is genuinely disputed.

With respect to Plaintiff, B+E hired Ms. Powers in 2015 as a Purchasing & Administrative Assistant and later Purchasing and Administration Manager. Throughout her employment, she reported to Axel Lindenbeck. In these purchasing and administrative roles, Plaintiff was responsible for standard purchasing duties of the companies including requests for quotes, understanding bills of materials, placing orders and clarifying pricing discrepancies. In addition, she assisted with FedEx and UPS shipping and the coordination of internal and external audits for purposes of Defendants' ISO certification. Occasionally, Ms. Powers assisted CFO Nora Lindenbeck with invoicing. *See* Doc. No. 21-1 at 74-77.

Plaintiff received positive job performance evaluations from Axel Lindenbeck for the years 2016 and 2017, in which she was praised as "exceed[ing] expectations," "staying late when needed," and being "committed to the success of [the] company." *See* Doc. No. 21-5 at 44-45, 52-54; Doc. No. 21-10 at ¶ 4. While she did not receive formal annual job performance appraisals in 2018 or 2019, Ms. Powers states that she received positive feedback and compliments regarding her work performance throughout the remainder of her employment with the Defendants. *Id.* at ¶ 5; Doc. No. 21-1 at 53, 173-74. Also, Ms. Powers received regular increases in her salary and once received a cell phone from Axel Lindenbeck in lieu of a monetary bonus. *See* Doc. No. 21-1 at 186-88, 265-67. Prior to her termination, she did not receive any formal written warnings or reprimands for work performance deficiencies or misconduct. *See* Doc. No. 21-5 at 62-66, 84-89. However, Defendants contend that beginning in August 2019, Axel Lindenbeck sought to "identify

5

the inefficiencies of Powers' job performance and ultimately help her improve" so he asked Dirk Lindenbeck to "shadow" Plaintiff. Then, based on Dirk's feedback, Axel had conversations with Plaintiff to follow up on Dirk's observations. *See* Doc. No. 20 at 4.

It is undisputed that Plaintiff's employment with B+E was terminated in the evening of December 23, 2019, the same day as the company's employee Christmas luncheon, and that Dirk Lindenbeck alone told Ms. Powers that she was being terminated. Much of the rest of the story is hotly disputed. According to Defendants, Axel Lindenbeck made the decision to terminate Powers' employment with B+E on December 23, 2019, because she allegedly had failed to ensure that a million dollar shipment of valves on December 18, 2019, was properly insured and because of a suspension of B+E's ISO Certification on December 23, 2019. *See* Doc. No. 20-3 at 137. Defendants allege that Axel Lindenbeck did not seek feedback from Dirk Lindenbeck or anyone else on his decision to terminate Powers' employment. *See id*. at 138, 162. However, Axel testified that he did call Dirk Lindenbeck, informed him that terminating Powers' employment could not wait, and asked Dirk Lindenbeck to drive to the facility and inform Powers of the decision to terminate her employment because Axel had left the facility to visit a customer. *See id*. at 164-165. 20:16-22. Allegedly following Axel Lindenbeck's instructions, Dirk Lindenbeck then informed Powers that her employment with Defendant B+E was terminated because of the insurance and ISO Certification issues. *See* Doc. No. 20-5 at 19-20, 64.

Plaintiff tells a different (and longer) story. According to Ms. Powers, when he terminated her in the evening of December 23, 2019, Dirk Lindenbeck told her that "he" was terminating her employment for "cause" because she purportedly failed to insure a shipment of valves and caused the company to have its ISO certification suspended. Plaintiff disputes and denies these allegations, stating that Nora Lindenbeck was responsible for obtaining supplemental insurance on special

6

shipments and Axel Lindenbeck was unavailable to work with her in order to provide a timely response with regard to the ISO external auditors' requests. *See* Doc. No. 21-1 at 175-78, 276-78; Doc. No. 21-10 at ¶¶ 6-21. Further, Plaintiff testifies that immediately following this conversation with Dirk Lindenbeck, while she was putting her belongings in her car, Dirk demanded that she provide him with the cell phone Axel Lindenbeck had given to her as a bonus. Doc. No. 21-1 at 179-88. Ms. Powers declined to give him the phone at that time because she had placed her own SIM card in the cell phone, but offered to return the phone the following day. *Id*. at 181-82. This was not acceptable to Dirk Lindenbeck, who again demanded she return the phone that evening and allegedly stated that he was *"getting the phone tonight"* and he was *"going to follow [Ms. Powers] until I get the phone, so wherever you go, I'm going, and I have all night long." Id*. at 180-81.

    Ms. Powers then drove to the home of her ex-husband, Herbert Amster (now deceased), and called her daughter, Gabrielle Amster, to meet her there. Dirk Lindenbeck pursued Ms. Powers in his car to the Amster residence. *Id*. at 182-85. Once at the Amster residence, Dirk Lindenbeck, allegedly went into an angry tirade in the presence of both Ms. Powers and her daughter. Powers testifies that after she had removed her SIM card from the cell phone and returned it to Mr. Lindenbeck (who was waiting in the garage with Powers' daughter), he called her a *"harlotan"* and told her that *"women didn't belong in the business to begin with,"* that Powers *"never should have been hired"* and that she *"won't be hired again and [she] won't find a job in Charlotte." Id.* at 185-86; Doc. No. 21-10 at ¶ 22.  Powers' daughter Ms. Amster's testimony corroborates Ms. Powers' account and further alleges that while she was in the garage with Dirk Lindenbeck waiting on her parents to remove the SIM card from the phone, he made similar statements to her including that her *"mother was 'a woman' and that it wasn't her place to be in a business like his." See* Doc.

7

No. 21-13 at 10-30, 37-40; Doc. No. 21-14. Mr. Lindenbeck denies making any discriminatory statements to either Ms. Powers or her daughter.

On March 26, 2020, Ms. Powers filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. In her charge of discrimination, Ms. Powers alleged that she was terminated from her employment on December 23, 2019, and was replaced by a younger male, Alex Kovach. *See* Doc. No. 21-15. Plaintiff alleges that Mr. Kovach remained employed by Defendants from January 2020 through May 13, 2021, and assumed, initially, most, if not all of Ms. Powers' former responsibilities. *See* Doc. No. 21-16 at Def.000286-87; Doc. No. 21-5 at 180-85. Defendants describe the placing of Mr. Kovach in Ms. Powers role as "temporary" and contend that she was ultimately "replaced" with an older female employee. *See* Doc. No. 20-3.

Ms. Powers alleges that she struggled to locate new employment following her termination and became concerned that B+E was providing negative employment references because of Dirk Lindenbeck's threat to make it difficult for her to find another job in Charlotte. In December 2020, Plaintiff engaged a private investigator, Megan Bentley, to find out what B+E was telling prospective employers. When Ms. Bentley called the company phone number listed in Ms. Powers' original charge of discrimination, she reached Dirk Lindenbeck. *See* Doc. No. 21-2 at 8-17. In a short recorded conversation, Dirk Lindenbeck told the investigator that he had terminated Ms. Powers' employment "myself," that Ms. Powers was ineligible for rehire because "she has sued us," and that she had been terminated for poor performance, specifically the failure to insure a large shipment of valves. *Id*. at 19-28. Ms. Powers filed a second charge of discrimination with the EEOC on February 2, 2021, alleging that her former employer retaliated against her by providing a negative employment reference in violation of Title VII and the ADEA. *See* Doc. No.

21-17. In response to this second charge of discrimination, B+E denied that Dirk Lindenbeck made any negative statements about Ms. Powers. *See* Doc. No. 21-18 at Def.000291-92, 000294).

This action was timely filed on February 25, 2022, in the Superior Court for Mecklenburg County, North Carolina and removed to this Court on March 16, 2022. Plaintiff asserts claims for employment discrimination based on her sex and retaliation "by providing negative job references to her prospective employers" in violation of Title VII (First claim); wrongful discharge under North Carolina law (Second claim); tortious interference with economic advantage (Third claim); and tortious interference with contract (Fourth claim). *See* Doc. No. 1-1. Defendants filed their Motion for Summary Judgment on all claims on April 17, 2023. The motion has now been fully briefed and is ripe for decision.

### III. DISCUSSION

A. **Title VII Claims**

1. Wrongful Discharge

Under Title VII, it is unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 20000e-2. Powers alleges that she was discharged due to her sex. A plaintiff may establish a Title VII violation in two ways. *See Presnell v. Sharp Elecs. Corp.*, No. 521CV00107KDBDCK, 2022 WL 17683126, at *8–10 (W.D.N.C. Dec. 14, 2022). First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*

9

*generally Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc).

Direct evidence is evidence from which no inference is required. To show discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286-91 (4th Cir. 2004). Such direct evidence would include a decisionmaker's statement that he fired a plaintiff due to her sex. *See id*. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or an "actual decisionmaker behind," the allegedly discriminatory action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151-52 (2000); *McRae v. Niagara Bottling, LLC*, No. CR520CV00131KDBDCK, 2021 WL 3518530, at *4 (W.D.N.C. Aug. 10, 2021), *aff'd sub nom. McRae v. Niagara Bottling*, No. 21-1884, 2022 WL 523071 (4th Cir. Feb. 22, 2022).

Plaintiff argues that Dirk Lindenbeck's alleged statements *"women didn't belong in the business to begin with,"* that Powers *"never should have been hired,"* and *"[Powers]was 'a woman' and that it wasn't her place to be in a business like his"* are direct evidence of sex discrimination. The Court agrees. Defendants do not (and could not credibly) contend that such clear statements are not direct evidence of sex discrimination. Rather, Defendants argue that whatever Dirk Lindenbeck said to Ms. Powers and her daughter cannot support a claim of sex discrimination because Axel Lindenbeck rather than his father was the sole decisionmaker and Dirk Lindenbeck was only Axel's messenger. *See Corbitt v. Home Depot USA, Inc.*, 589 F.3d 1136, 1157 (11th Cir. 2010) ("The sole fact that a particular employee informs a plaintiff of his or her termination does not raise a genuine issue of material fact that such employee is the decision

maker. An employee who functions as 'facilitator or conduit only' is not a true decision maker."); *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) ("[C]omments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination.").

However, the Court finds – as discussed at length above – that whether or not Dirk Lindenbeck was the primary or, at a minimum, one of the principal decisionmaker(s) with respect to Plaintiff's termination is genuinely disputed. While Defendants characterize Dirk Lindenbeck's role as only relaying Axel Lindenbeck's termination decision (and a jury could of course agree with that version of events), the Court on summary judgment must construe the evidence "in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." Viewing the evidence through that lens, a jury could infer from the evidence that Dirk Lindenbeck in fact "fired her myself" (as he allegedly stated twice) or that by his position as "chairman of the board" and practical influence in the family business that he was still "calling the shots" despite having relinquished formal titles of control. Therefore, the jury must determine if Dirk Lindenbeck's discriminatory statements can be properly attributed to the corporate defendants and summary judgment cannot be awarded to Defendants on Plaintiff's claim for sex discrimination in violation of Title VII.

Further, even in the absence of this direct evidence of discrimination, the Court would allow Plaintiff's Title VII claim to survive summary judgment under the burden-shifting framework established in *McDonnell Douglas*. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took

11

the adverse employment action "for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Hill*, 354 F.3d at 285; *see also Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] ha[s] to prove 'both that the reason was false, and that discrimination was the real reason.' ") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

The elements of a prima facie claim of discrimination under Title VII are well established. "The plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802); *Goode v. Cent. Va. Legal Aid Soc. Inc.*, 807 F.3d. 619, 626 (4th Cir. 2015); *Redmon v. Flexsol Packaging Corp.*, No. 519CV00124KDBDSC, 2021 WL 1109361, at *5–6 (W.D.N.C. Mar. 23, 2021).

Powers' membership in a protected class and termination are not disputed. At issue here is the second element and, to a lesser degree, the fourth element. Defendants contend that Plaintiff cannot prove her prima facie case because she was not meeting her employer's legitimate job performance expectations. Yet, Ms. Powers' work performance is genuinely disputed. First, she was a long term employee with a history of favorable job performance reviews, salary raises and the absence of any written reprimands for performance deficiencies or otherwise. And, as to the acknowledged insurance and ISO problems which immediately preceded her termination, Ms. Powers' responsibility for the errors is clearly disputed. In sum, whether the insurance and ISO

problems were her fault or whether she was the scapegoat for the failings of others (and thus did not fail to meet *legitimate* performance expectations) is another factual disagreement for the jury to decide and cannot be grounds for summary judgment. Similarly, with respect to the question of whether Plaintiff was replaced by a male employee (which Plaintiff offers to satisfy the fourth element), the parties agree that a male employee was initially hired into Plaintiff's position, although Defendants characterize his hiring – for close to a year and a half – as "temporary." Thus, at the very least, Plaintiff has established a disputed factual issue as to the fourth element of her prima facie case.

Having established a prima facie case (for the purposes of this motion), Plaintiff must also raise a triable claim that Defendants' purported legitimate non-discriminatory reasons given for her termination – Powers alleged failures related to procuring insurance and ISO Certification – were only a pretext for intentional discrimination based on her sex. *See St. Mary's Honor Center,* 509 U.S. at 507 ("A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that [discrimination] was the real reason."). The Court finds that she has met her burden at summary judgement. Again, viewing the facts in the light most favorable to Ms. Powers, a jury could (but need not) conclude that Defendants' asserted reasons for the termination are pretextual because she was not primarily responsible for procuring insurance or forestalling the ISO Certification and there is evidence of intentional discrimination reflected in Dirk Lindenbeck's comments. Therefore, Plaintiff has proffered sufficient evidence of "pretext" for her Title VII claim of sex discrimination to survive summary judgment.[2]

---

[2] In finding that Plaintiff's Title VII sex discrimination claims can go forward the Court expresses no view as to the merits of Plaintiff's claim or any forecast of the jury's decision. Rather, the Court's ruling is only that it is the jury's decision, not the Court's, as to the true facts attendant to Plaintiff's termination.

2. Retaliation

In addition to her claim for wrongful discharge, Plaintiff contends that Defendants retaliated against her for filing an EEOC charge by providing negative job references to her prospective employers. Title VII prohibits an employer from discriminating against its employee because she "has opposed any ... unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a). As with her wrongful termination claim, Powers may support a retaliation claim in violation of Title VII either through direct evidence of an intent to retaliate, or through the burden-shifting framework of *McDonnell Douglas*. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). However, with respect to her allegations of retaliation through negative job references, Powers has offered no direct evidence of retaliatory animus,[3] nor evidence sufficient to proceed under the *McDonnel-Douglas* framework.

Under *McDonnel-Douglas*, a plaintiff must first make a prima facie case of retaliation. *Foster*, 787 F.3d at 250. To do so, Powers must show that "(1) she engaged in protected conduct; (2) an adverse action was taken against her by [Defendant]; and (3) there was a causal connection between the first two elements." *Ulrich v. CEXEC, Inc.*, 709 F. App'x 750, 753 (4th Cir. 2017) (per curiam). Then, if the defendant offers a legitimate, non-discriminatory reason for the action in question, Plaintiff must prove by a preponderance of the evidence that the proffered reason was pretextual. *Id*.

---

[3] Plaintiff alleges that Dirk Lindenbeck told an investigator that Plaintiff was not eligible to be rehired because "she's sued us," i.e. filed her EEOC claim. Even if this statement is considered to be retaliatory animus with respect to rehiring, which Plaintiff has not sought, it is not evidence of an intent to retaliate by interfering with Plaintiff's future employment elsewhere. Indeed, Mr. Lindenbeck's alleged statement that Plaintiff would "not find a job in Charlotte" preceded the filing of her EEOC charge so that statement cannot reflect retaliation for filing the claim (even if it plainly shows general animus towards Plaintiff).

14

Powers' retaliation claim fails as a matter of law because she cannot establish at least the second element of a prima facie retaliation claim – proof of an adverse action. Simply put, Plaintiff has presented no evidence that Defendants had any communication with any of Plaintiff's prospective employers. Indeed, no prospective employer has even been identified. Also, Dirk Lindenbeck's call with Plaintiff's investigator posing as a prospective employer is no substitute for the real thing. Assuming, without deciding, that the call with the investigator reflected Defendants' intent to provide negative job references to prospective employers, such intent would, by itself, be insufficient. In other words, even a proven intent to retaliate cannot support a claim for retaliation in the absence of actual retaliatory conduct. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (In order to prevail on a discrimination claim under Title VII, "the existence of some adverse employment action is required."). Thus, Defendants are entitled to summary judgment on Plaintiff's claim of retaliation in violation of Title VII.

### B. State Law Wrongful Discharge Claim

In addition to her claim of discrimination under Title VII, Plaintiff has asserted a claim for wrongful discharge pursuant to North Carolina public policy as stated in the North Carolina Equal Employment Practices Act (EEPA). The parties agree that the scope and elements for this claim mirror Plaintiff's Title VII claim. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995) (holding that the North Carolina Supreme Court "explicitly adopted the Title VII evidentiary standards in evaluating a state claim under" the EEPA); Doc. No. 20 at 15; Doc. No. 21 at 11. Having concluded that Plaintiff has established a triable claim for sex discrimination under Title VII, the Court will similarly deny Defendants' motion for summary judgment on Plaintiff's claim for wrongful discharge based on sex discrimination under North Carolina law.

### C. Remaining State Law Claims

Ms. Powers remaining state law claims are for wrongful discharge on account of age, tortious interference with contract, and tortious interference with prospective economic advantage. She concedes that she is unable to survive summary judgment as to all of those claims. *See* Doc. No. 21 at 2. Therefore, Defendants' motion will be granted as to those claims and summary judgment will be entered in Defendants' favor.

### IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 19) is **GRANTED** in part and **DENIED** in part**;**

2. Partial Summary Judgment in favor of Defendants is entered on Plaintiff's claims for retaliation under Title VII, wrongful discharge on account of age, tortious interference with contract and tortious interference with prospective economic advantage;

3. Defendants' Motion for Summary Judgment is denied as to Plaintiff's claims for violation of Title VII and wrongful discharge under North Carolina law based on sex discrimination; and

4. This case shall proceed to trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: May 11, 2023

Kenneth D. Bell
United States District Judge